## No. 14-1804

In The

# United States Court of Appeals for the Fourth Circuit

PATRICK W. BUSH,

*Plaintiff - Appellant,*

*v.*

CHUCK HAGEL, Secretary of Defense,

*Defendant - Appellee,*

*and*

LEON E. PANETTA, Secretary of Defense,

*Defendant.*

*On Appeal from the United States District Court for the Eastern District of Virginia at Alexandria in No. 1:12-CV-01483-AJT-IDD (Hon. Anthony John Trenga, Judge)*

## BRIEF FOR APPELLANT

LENORE C. GARON
LAW OFFICE OF
    LENORE C. GARON, PLLC
2412 Falls Place Court
Falls Church, VA 22043
(703) 534-6662
lenore@lenorecgaron.com

DONNA WILLIAMS RUCKER
RUCKER & ASSOCIATES, P.C.
888 16th Street, N.W., Suite 800
Washington, DC 20006
(202) 349-9830
drucker@ruckerlawpc.com

OCTOBER 14, 2014                    *Counsel for Plaintiff-Appellant*

# UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

## DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

No. 14-1804          Caption: Bush v Hagel                                    .

Pursuant to FRAP 26.1 and Local Rule 26.1,

Patrick W. Bush          who is   Appellant     , makes the following disclosure:
  (name of party/amicus)          (appellant/appellee/amicus)

1.     Is party/amicus a publicly held corporation or other publicly held entity?
      ( ) YES                              ( X ) NO

2.     Does party/amicus have any parent corporations?
      ( )    YES                              ( X ) NO
If yes, identify all parent corporations, including grandparent and great-grandparent corporations:

3.     Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?
      ( ) YES                              ( X ) NO
If yes, identify all such owners:

4.     Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation (Local Rule 26.1(b))?
      ( ) YES                              ( X ) NO
If yes, identify entity and nature of interest:

5.     Is party a trade association (amici curiae do not complete this question)?
      ( ) YES                              ( X ) NO
If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.     Does this case arise out of a bankruptcy proceeding?
      ( ) YES                              ( X ) NO
If yes, identify any trustee and the members of any creditors' committee:

Dated: October 14, 1014                    /s/ Lenore C. Garon
                                           Attorney for Patrick W. Bush

i

# TABLE OF CONTENTS

*Page*

DISCLOSURE OF CORPORATE AFFILIATIONS AND
OTHER INTERESTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . i

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . v

JURISDICTIONAL STATEMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

ISSUES PRESENTED FOR REVIEW . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

STATEMENT OF THE CASE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

    September 2009 – Denial of Nomination for DSLDP . . . . . . . . . . . . . . . . . 3

    November 2009 – Mr. Bush's Nonselection for
    Deputy Assistant Director, Resource Management . . . . . . . . . . . . . . . . . . . 5

        1.    The Selectee's Application Lacked the Required Current
             Performance Evaluation. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

        2.    The Selectee May Not Have Been Minimally Qualified . . . . . 7

        3.    The Selection Process Was Not Handled as a Competitive
             Reassignment. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

        4.    Documentation of the Selection Process Was Not
             Maintained. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

    Procedural History Following the Nonselection . . . . . . . . . . . . . . . . . . . . . . 10

      Mr. Bush Files An EEO Complaint . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

      Federal Court Proceedings . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

SUMMARY OF ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

I.     Standard of Review . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

II.    The Trial Court Erred in Weighing the Evidence, Judging
       Credibility, and Drawing Inferences Against the Non-Movant. . . . . 16

A.     A Reasonable Jury Could Have Found that the Deficiencies in
       the Selection Process Created an Inference of Discrimination. . . . . 16

       1.    Acceptance of the Selectee's Application Despite the
             Absence of a Current Performance Evaluation. . . . . . . 17

       2.    Was the Selectee "Minimally Qualified"?      . . . . . . . 19

       3.    Rating and Ranking Was Not Performed and a
             Career Development Board Was Not Convened.  . . . . 20

       4.    Records of the Selection Process Were Not
             Maintained As Required by Regulation.  . . . . . . . . . . 21

B.     The Refusal To Nominate Mr. Bush for the DSLDP
       Training Was Additional Evidence of Discriminatory
       Motive. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

C.     The Trial Court Improperly Weighed the Evidence in
       Concluding That the Deficiencies in the Process Were Not
       Probative of Pretext. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

III.   The Trial Court Erred in Concluding that Mr. Bush Failed to
       Make Out a Prima Facie Case of Discrimination in Training. . . . . 24

IV.    The Court Ignored Substantial Evidence in Holding that There
       Is No Evidence of Pretext in the Agency's Reason for Denying
       Plaintiff's DSLDP Application. . . . . . . . . . . . . . . . . . . . . . . . . 25

iii

A.    All Employees Had the Same Opportunity to
      Apply for DSLDP As Did Mr. Bush. . . . . . . . . . . . . . . . . . . 25

B.    Ms. Stephenson's Explanation of Her Refusal to
      Nominate Mr. Bush is Contradicted by Mr. Anderson's
      Explanation and Other Evidence. . . . . . . . . . . . . . . . . . . . . 26

C.    The Shifting Rationales Are Evidence of Pretext. . . . . . . . . 27

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

REQUEST FOR ORAL ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

CERTIFICATE OF COMPLIANCE WITH RULE 28.1(e) or 32(a) . . . . . . . . . 31

CERTIFICATE OF SERVCE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

# TABLE OF AUTHORITIES

*Page(s)*

*Cases*

*Alvarado v. Board of Trustees*,
  928 F.2d 118 (4th Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17, 28

*Anderson v. Liberty, Inc.*,
  477 U.S. 242, 249, 106 S. Ct. 2505, 91 L. Ed. .2d 202 (1986) . . . . . . . . . . 23

*Ballinger v. North Carolina Agricultural Extension Service*,
  815 F.2d 1001 (4th Cir. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Charbonnages de France v. Smith*,
  597 F.2d 406 (4th Cir. 1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 16, 23

*Dennis v. Columbia Colleton Medical Center, Inc.*,
  290 F.3d 639 (4th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

*EEOC v. Sears Roebuck & Co.*,
  243 F.3d 846 (4th Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

*Garrett v. Hewlett-Packard Co.*,
  305 F.3d 1210 (10th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Lathram v. Snow*,
  336 F.3d 1085 (D.C. Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*McDonnell Douglas Corporation v. Green*,
  411 U.S. 792(1973) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Merritt v. Old Dominion Freight Line, Inc.*,
  601 F.3d 289 (4th Cir. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16, 28

*Miller v. Leathers*,
  913 F.2d 1085 (4th Cir. 1990) (*en banc*) . . . . . . . . . . . . . . . . . . . . . . . 15

v

*Poller v. Columbia Broadcasting System, Inc.*,
    368 U.S. 464 (1962) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Reeves v. Sanderson Plumbing Products, Inc.*,
    530 U.S. 133 (2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20, 26, 30

*Rudin v. Lincoln Land Community College*,
    420 F.3d 712 (7th Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . 17, 21, 22

*Russell v. Microdyne Corp.*,
    65 F.3d 1229 (4th Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Sosebee v. Murphy*,
    797 F.2d 179 (4th Cir. 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*St. Mary's Honor Center v. Hicks*,
    509 U.S. 502 (1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26, 30

*Texas Dept. Of Community Affairs v. Burdine*,
    450 U.S. 248 (1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

*Thompson v. Potomac Electric Power Co.*,
    312 F. 3d 645 (4th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*United States v. Burgos*,
    94 F.3d 849 (4th Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

*Vodusek v. Bayliner Marine Corp.*,
    71 F.3d 148 (4th Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Whiteman v. Chesapeake Appalachia, L.L.C.*,
    729 F.3d 381 (4th Cir. 2013) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Williams v. Giant Food Inc.*,
    370 F.3d 423 (4th Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

***Statutes, Rules and Regulations***

Freedom of Information Act . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

28 U.S.C. § 1291 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

28 U.S.C. § 1331 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

42 U.S.C. § 2000e-16 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

5 C.F.R. § 335.103(b)(5) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

29 C.F.R. § 1614.108(g) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Fed. R. Civ. Pro. 56(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

***Other Authorities***

Office of Personnel Handbook X-118. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Personnel Management Manual . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 7-9, 22

Supplement to the PMM . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 21

# **JURISDICTIONAL STATEMENT**

Basis for District Court Jurisdiction.  Patrick Bush filed this action challenging, *inter alia*, racial discrimination in his nonselection for promotion and for training, in violation of the Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-16.  Following a hearing before the Equal Employment  Opportunity Commission, Mr. Bush received a Final Agency Decision denying his complaint on September 24, 2011, thereby exhausting his administrative remedies.  He timely filed the initial Complaint in this action within 90 days of receipt of that Decision, on December 21, 2012.  Pursuant to 28 U.S.C. § 1331, the district courts have jurisdiction over all civil actions arising under the laws of the United States.

Basis for Court of Appeals Jurisdiction.  On January 30, 2014, the District Court for the Eastern District of Virginia (Alexandria Division) entered an order granting summary judgment in favor of Defendant Chuck Hagel, Secretary of Defense.  This order disposed of all outstanding issues and dismissed the case.  Mr. Bush timely filed his Notice of Appeal on February 28, 2014.  Jurisdiction of appeals from final decisions of the United States District Courts is vested in the United States Circuit Courts of Appeals by 28 U.S.C. § 1291.

## ISSUES PRESENTED FOR REVIEW

1.     Did the trial court improperly grant summery judgment by drawing inferences in favor of the moving party and by weighing or disregarding admissible evidence from which a reasonable jury could have inferred that the Appellee's purported reasons for its decisions were pretextual and that the real motivation for its decisions was racial discrimination?

2.     Did the trial court improperly grant summary judgment by drawing inferences in favor of the moving party and by weighing or disregarding admissible evidence presented by the Appellant that made out a *prima facie* case of discrimination when the Agency refused to nominate him for training?

2

## STATEMENT OF THE CASE

### September 2009 – Denial of Nomination for DSLDP

Appellant Patrick Bush is an African American male, until recently serving as Chief, Administrative Management Division, GS-341-15, of the Defense Contracting Audit Agency ("DCAA" or "Agency"). Through his own initiative and research, Mr. Bush learned of the Defense Senior Leadership Development Program ("DSLDP"), a senior level training program for leaders in the Department of Defense. Patrick Bush Decl., A805[1]. Graduates of the program are part of the feeder group for the Senior Executive Service ("SES"). Patrick Bush Dep., A144. Philip Anderson, Assistant Director, Resources, Mr. Bush's second-line supervisor, described it as a qualification that would enhance the resume of someone seeking an SES position. Philip Anderson Dep., A408-09.

---

[1] The following abbreviations will be used in citations to the record in this brief:

A - indicates the page of the Appendix on which the item is found
App. Pkg. - Application Package
Dep. - Deposition
Decl. - Declaration
JOA - Job Opportunity Announcement
Mem. - Memorandum
Op. - Opinion
PMM - Personnel Management Manual

3

Any DCAA employee could have learned of the existence of the program, as the DCAA Intranet Career Development page contained a link to it. Email from Patrick Bush, A72. Mr. Bush's application for the program was endorsed by both his first- and second-line supervisors. DSLDP Supervisors' Assessment, A236-37. However, the Agency Director declined to forward his application to DoD for the second round of the selection process, allegedly because the Agency did not publicize the program and she felt it would be unfair to other Agency personnel who had not learned of and nominated themselves for the program. Philip Anderson Dep., A62. Additionally, Mr. Bush was told, DCAA had determined in previous years that the DSLDP did not meet the "unique needs" of the Agency and it was supposedly developing its own executive development program. Email from Philip Anderson, A73. (To date, no such DCAA-specific program has appeared. In subsequent years, DCAA nominated other employees to the DSLDP. Philip Anderson Dep., A397, 407.)

The explanation shifted for the first time in the course of the EEOC investigation, when April Stephenson, DCAA Director in September 2009, added an explanation not given to Mr. Bush and never mentioned by Mr. Anderson in the course of discovery: Ms. Stephenson claimed that Mr. Bush's first- and second-line supervisors, Gary Simpson and Mr. Anderson, did not feel that Mr. Bush had "demonstrated the skills and leadership potential to progress to a future senior

4

executive position at that time." April Stephenson Decl., A241. Ms. Stephenson's explanation made no mention of the DCAA executive training program that Mr. Anderson claimed was in development. *Id.*, A239-43.

### November 2009 – Mr. Bush's Nonselection for <br> <u>Deputy Assistant Director, Resource Management</u>

In November 2009, Mr. Bush replied to a job opportunity announcement ("JOA" – also sometimes referred to as a "vacancy announcement") for Deputy Assistant Director, Resource Management, DCAA. JOA, A245-50. He was interviewed for the position, but a white male, Merrick Krause, was selected for the position.[2] Philip Anderson Mem., A289-90; Letter from Stephanie Harrison to Patrick Bush, A578. Mr. Krause was at that time a GS-15 Program Analyst in the Department of Homeland Security ("DHS"), having been "realigned" from a previous position as head of the Analysis and Strategy division of that agency. Merrick Krause Appl. Pkg., A474; Merrick Krause SF50 of December 2009, A786. There is a dispute of fact as to whether this realignment was due to problems with Mr. Krause's performance or whether it was caused by changes in the mission of the position to which he had been appointed. *Compare* Mark Brooks Affidavit, A615 *with* Merrick Krause Decl., A825-27.

---

[2] The selection panel's first choice for the position accepted a job elsewhere before the selection process was completed. Philip Anderson Mem., A289.

5

Mr. Bush filed a Freedom of Information Act ("FOIA ") request for the materials utilized in the selection process. Patrick Bush Decl., A804. Review of the materials, and other information produced during the discovery process in this case, discloses that the selection process deviated from the required procedures in several material respects, or at the very least, that there is a significant dispute of fact as to whether the procedures not followed were required.

## 1. The Selectee's Application Lacked the Required Current Performance Evaluation.

The vacancy announcement instructed that the application package was required to contain a copy of the applicant's "most current annual performance appraisal." JOA, A249. In November 2009, that should have been either a 2009 or (if the 2009 performance appraisal was not yet finalized) 2008 performance appraisal. However, Mr. Krause submitted his 2007 performance appraisal, Merrick Krause Appl. Pkg., A492, allegedly because he was unable to retrieve the most current one. Defendant's Interrogatory Answers, A589-90. Mr. Anderson, who chaired the selection panel, Philip Anderson Dep., A296, acknowledged that an incomplete application should not be considered. *Id.,* A323.

The Agency takes the position that Mr. Krause's application was not incomplete because Mr. Krause provided an explanation for using the older performance

6

appraisal, *Id.*, A328-29.    However, no such exception exists in the vacancy announcement and the Agency has provided no support in any regulation or manual for such an exception.

### 2.  The Selectee May Not Have Been Minimally Qualified

Second, there is a dispute of fact as to whether Mr. Krause was eligible to be on the list of potential selectees.  Basic qualification standards prescribed for specific job series are set out in Office of Personnel ("OPM") Handbook X-118.  In addition, any special knowledge, skill, or ability that goes beyond the minimum qualification standards and is essential for satisfactory performance in a specific position becomes part of the minimum qualification standards for the position. DCAA PMM, A644-45. The determination of whether a candidate is "minimally qualified" is made by the staffing specialist in Human Resources, in this case, Shawnda Cruz. Shawnda Cruz Decl., A767.  Ms. Cruz's supervisor, Stephanie Harrison, stated that Ms. Cruz was the only person in the office who knew how to perform job analysis and rating based on the OPM qualification standards. Stephanie Harrison Decl., A792.   Ms. Cruz determined that Mr. Krause was not qualified because he lacked the specialized experience required for the position. Shawnda Cruz Decl., A767, 770.  Ms. Harrison has stated that she disagreed and rated Mr. Krause as minimally qualified. Stephanie Harrison Decl., A767-68; Shawnda Cruz Decl., A772.  Ms. Harrison's Declaration

7

states that, despite the fact that she changed Mr. Krause's rating, she inadvertently left his name off the list of eligibles that she typed, but forwarded his application. Then, when asked why she had forwarded Mr. Krause's application when he was not on the list, she re-typed the list to rectify her error. Stephanie Harrison Decl., A793.

### 3.    The Selection Process Was Not Handled as a Competitive Reassignment.

Third, the selection process was not handled in accordance with the required procedures for a competitive reassignment, for which there should be a rating and ranking of the candidates according to the standards set out in Chapter 36 of the DCAA Personnel Management Manual ("PMM"). The manual requires that the candidates be rated and ranked according to the evaluation factors relevant to the position, according to techniques set out in the manual, PMM, A645, 655-57, 687-691, and reviewed by a Career Development Board, before the five best are referred to the selecting official. *Id.*, A642. Although a crediting plan was created by the Human Resources staff,A283-87, it was not utilized by the selection panel to rank the candidates, nor were the candidates reviewed by a Career Development Board. Philip Anderson Dep., A305.

Mr. Anderson asserted that competitive procedures were not required, because this was a noncompetitive reassignment rather than a promotion. *Id.,* A303-04; *see*

8

*also* PMM, A667. However, the Supplement to the PMM states that competitive reassignment procedures are to be used in situations where an employee "will receive a 5% increase to base salary when placed through a job opportunity announcement in the same or a comparable pay band with a higher control point." PMM Supplement, A706. The Supplement to the PMM also states that competitive merit staffing procedures are "required for a reassignment to a position with a higher level of responsibility." PMM Supplement, A718. Mr. Krause received a salary increase of slightly more than five percent,[3] and the table showing levels of responsibility indicates that, for Mr. Krause (who had been a division chief, Merrick Krause Decl., A825-26), the position of Deputy Assistant Director was a step up in responsibility. PMM Supplement, A719.[4]

### 4. Documentation of the Selection Process Was Not Maintained.

Both 5 C.F.R. § 335.103(b)(5), A696, and the PMM, A659-60, require that complete documentation of every promotion action be retained for two years or until

---

[3]  *Compare* Mr. Krause's Department of Homeland Security SF50 for December 2009, A786, showing an annual salary of $127,604, *with* his DCAA SF50 of March 2010, A621, showing an annual salary of $135,993.

[4]  Ms. Harrison, in Human Resources, took conflicting positions as to whether the appropriate procedures were followed: She wrote Mr. Bush that a competitive process should have been used, Note from Stephanie Harrison to Patrick Bush, A623, but subsequently submitted a declaration explaining why it need not have been used. Stephanie Harris Decl., A822-23.

the program has been formally evaluated by the Office of Personnel Management. However, although Mr. Anderson's notes from the selection process were available when Mr. Bush made his FOIA request, Patrick Anderson Dep., A301, the notes of the other panel members were not available, Data/Document Request for Patrick Bush, A785, and one member, Patricia Letzler, apparently destroyed her notes. Affidavit of Darryl Aaron, A614.  This violation of the record-keeping requirement prevents any examination of the fairness of the interview process.

## Procedural History Following the Nonselection

### Mr. Bush Files An EEO Complaint

Following his nonselection and his review of the documents produced in response to his FOIA request, on April 10, 2010, Mr. Bush initiated contact with an EEO counselor. *Cf.* EEO Complaint, A829ff.  Mr. Bush asserts that Mr. Krause is not qualified for the position, due to his incomplete application and the fact that Shawnda Cruz, the personnel specialist considered most familiar with the OPM requirements, found him to lack the specialized experience required by the position.  It is undisputed that Mr. Bush is qualified by both education and experience. *See* Philip Anderson Mem., A289-90.

10

Mr. Bush filed a formal EEO Complaint on or about August 13, 2010.[5] He was notified via letter dated March 25, 2011, of the Agency's completion of its investigation into his Complaint and Amended Complaint. Pursuant to 29 C.F.R. § 1614.108(g), Mr. Bush requested a hearing before the Equal Employment Opportunity Commission on or about April 23, 2011. The Agency's Final Order, dated September 24, 2012, denied relief.

## Federal Court Proceedings

Mr. Bush timely filed his District Court Complaint on December 21, 2012, and an Amended Complaint on May 7, 2013.

The Agency moved for summary judgment, which Mr. Bush opposed. Following briefing and oral argument, the District Court granted the motion for summary judgment on January 30, 2014, dismissing Mr. Bush's claims.

Mr. Bush timely filed a Notice of Appeal on February 28, 2014. Mr. Bush seeks review of the Court's rulings that 1) the deficiencies in the selection process were not probative of racial discrimination; 2) that Mr. Bush failed to establish a *prima facie* case of racial discrimination in the Agency's refusal to nominate him in 2009 for the DSLDP training; and 3) that there is no evidence of pretext in the Agency's explanation for its refusal to nominate him.

---

[5] The EEO Complaint was amended, raising issues not present in this appeal, on November 10, 2010.

## SUMMARY OF ARGUMENT

Court of Appeals review of a grant of summary judgment is *de novo*, applying the same standard that the district court was required to apply. Summary judgment is warranted if, from the totality of the evidence, it appears that no genuine issue of material fact exists for trial and the moving party is entitled to judgment as a matter of law. The Court must view the evidence, and draw all reasonable inferences therefrom, in the light most favorable to the non-moving party. Neither the district court nor the Court of Appeals may resolve disputed facts, nor weigh the evidence, nor make determinations of credibility.

The trial court erred in weighing the evidence, judging credibility, and drawing inferences against the non-movant, Mr. Bush. There were facts to show that the selection process deviated from the established procedure for such appointments. An employer's failure to follow its normal personnel practices has been recognized to create an inference of discrimination. These irregularities included:

1.    The selectee's application was accepted despite the absence of a required component, the applicant's most recent performance evaluation.

2.    The Human Resources official with the most experience in determining eligibility according to OPM standards found the selectee to lack the required specialized experience, but was overruled.

12

3.     The selection, in which the selectee received a pay increase of more than five percent and moved to a higher level of responsibility than previously held, was handled as a noncompetitive reassignment, without rating and ranking the applicants or submission of their applications to a Career Development Board, contrary to the Agency personnel manual and supplements.

4.     Records of the selection process were not maintained as required by regulation.

Additionally, just two months earlier, the Agency refused to nominate Mr. Bush for training for which he qualified that would aid him in advancing to more responsible positions, despite strong recommendations from his supervisors. Prior treatment of an employee is evidence relevant to a showing of pretext and, together with the procedural irregularities, could be viewed by a reasonable jury as demonstrating a discriminatory motive. The trial court, in holding that any deficiencies in the process are not probative of racial discrimination, erroneously engaged in weighing the evidence; the issue should have been submitted to a jury.

The district court also erred in concluding that Mr. Bush failed to make out a *prima facie* case of discrimination in training. The court held that, as the Agency nominated no one for the DSLDP course, and as Mr. Bush had not undergone a

13

competitive process, he had not shown that the Agency provided the training to its employees and that he was eligible. However, through its own website, the Agency provided all of its employees with information about the availability of the training. Mr. Bush's supervisors advised in writing that he was eminently qualified for the training, and as he was the only one seeking nomination, no one was more competitive.

Finally, the district court ignored substantial evidence in holding that there is no evidence of pretext in the Agency's reason for denying plaintiff's DSLDP application. All employees had the same opportunity to apply as did Mr. Bush. Thus, the explanation – that it would be unfair to nominate him because others had not applied – makes no sense. A plaintiff can establish that he was a victim of intentional discrimination by showing that the employer's proffered explanation is unworthy of belief.

The Agency presented additional reasons for its refusal to nominate Mr. Bush for the DSLDP training, reasons that were both contradicted by the evidence and inconsistent with each other. It is established that an employer's proffer of multiple inconsistent explanations is an indication of pretext. Because one of the Agency's reasons was nonsensical and the others were inconsistent, the issue should have been sent to a jury to decide.

14

# **ARGUMENT**

## I.    **Standard of Review**

Court of Appeals review of a grant of summary judgment is *de novo*, applying the same standard that the district court was required to apply.  Summary judgment is warranted if, from the totality of the evidence, it appears that no genuine issue of material fact exists for trial and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. Pro. 56(a).  "When an appeal arises from a grant of summary judgment, the reviewing court must view the evidence, and draw all reasonable inferences therefrom, in the light most favorable to the non-moving party. " *Whiteman v. Chesapeake Appalachia, L.L.C.*, 729 F.3d 381 (4th Cir. 2013).

Neither the district court nor the Court of Appeals may resolve disputed facts, nor weigh the evidence, *Russell v. Microdyne Corp.*, 65 F.3d 1229, 1239 (4th Cir. 1995), nor make determinations of credibility. *Sosebee v. Murphy*, 797 F.2d 179, 182 (4th Cir. 1986). As this Court stated in *Charbonnages de France v. Smith*, 597 F.2d 406, 414 (4th Cir. 1979):

> [As] the nonmoving party would on trial carry the burden of proof, he is therefore entitled . . . to have the credibility of his evidence as forecast assumed, his version of all that is in dispute accepted, all internal conflicts in it resolved favorably to him, the most favorable of possible alternative inferences from it drawn in his behalf; and finally, to be given the benefit of all favorable legal theories invoked by the evidence so considered.

*Accord*, *Miller v. Leathers*, 913 F.2d 1085, 1087 (4th Cir. 1990) (*en banc*).

15

Furthermore, as both the Supreme Court and this Court have cautioned, where state of mind is an element of a claim or defense, such as in employment discrimination cases, summary judgment is seldom appropriate, because the establishment of the defendant's state of mind is dependent on the resolution of conflicting inferences and the weighing of witnesses' credibility. *Poller v. Columbia Broadcasting System, Inc.*, 368 U.S. 464, 473 (1962); *Ballinger v. North Carolina Agricultural Extension Service*, 815 F.2d 1001, 1005 (4th Cir. 1987); *Charbonnages de France*, *supra*.

**II.    The Trial Court Erred in Weighing the Evidence, Judging Credibility, <u>and Drawing Inferences Against the Non-Movant.</u>**

**A.    A Reasonable Jury Could Have Found that the Deficiencies in the Selection Process Created an Inference of Discrimination.**

The several ways in which the selection process for the position of Deputy Assistant Director, Resource Management, deviated from the established procedure for such appointments might well have led a reasonable jury to believe that the conclusion that Mr. Krause was more qualified than Mr. Bush was a pretext for racial discrimination against Mr. Bush. An employer's failure to follow its normal personnel practices has been recognized to create an inference of discrimination. *Merritt v. Old Dominion Freight Line, Inc.,* 601 F.3d 289, 298 (4th Cir. 2010) (use of

16

physical ability test in situation for which it was not prescribed); *Alvarado v. Board of Trustees*, 928 F.2d 118, 122-23 (4th Cir. 1991) (deviations from normal hiring process); *accord, e.g.*, *Rudin v. Lincoln Land Community College*, 420 F.3d 712, 727 (7th Cir. 2005) (failure to have a required screening committee review and rank the candidates); *Lathram v. Snow*, 336 F.3d 1085, 1093-94 (D.C. Cir. 2003) (use of different hiring process than that used for comparable positions in same period).

## 1. Acceptance of the Selectee's Application Despite the Absence of a Current Performance Evaluation.

As noted above, among the mandatory components ("Application packages must contain the following:") of the application was "4. Performance Appraisal. You must submit a copy of your most current annual performance appraisal." JOA, A249. The instruction does not permit an interpretation that allows substitution of a less-than-current performance appraisal. The reason for this is intuitively obvious: Performance can vary in the course of a career, and an applicant who did well a year or two ago might in recent months have faltered. Human experience is that performance awards might relate to accomplishments of a previous period, and a reference may be unwilling to say something negative about an individual, but a current performance evaluation – where the supervisor is addressing the employee and his own supervisors rather than a stranger – is the record of how each applicant has been doing most recently.

17

Mr. Krause submitted not his most current performance evaluation (2008), but that of the previous year (2007). A492-501. Defendant asserts that Mr. Krause was unable to access his 2008 evaluation. Defendant's Interrogatory Answers, A589-90. Both the vacancy announcement itself and Mr. Anderson in his testimony indicated that an incomplete application should not be considered.[6] JOA, A248; Philip Anderson Dep., A323.

Arguably, by itself, the acceptance of the older performance evaluation in lieu of the required current one, in the alleged circumstance of the current one's unavailability, might not raise an inference of discrimination.[7] However, coupled with

---

[6]  Mr. Anderson testified that he looked at Mr. Krause's official personnel record and could not find a 2008 evaluation. Curiously, Mr. Anderson testified that he does not recall if there was a 2009 – *i.e.*, even more current – evaluation in the file. Philip Anderson Dep., A326-27. Given that the application requirement precipitating the record check was for the most current evaluation, a reasonable jury might think it suspicious not even to notice whether the 2009 – *i.e.*, the most current possible – evaluation was present.

[7]  The vacancy announcement also called for the applicant's most recent Notification of Personnel Action (SF50). JOA, A249. Mr. Krause's application, dated November 19, 2009, contained an SF50 dated January 18, 2009. A506. The SF50 representing the realignment of Mr. Krause's position is dated December 6, 2009, A786, after submission of Mr. Krause's application but before his interview with the selection panel in January 2010. *See* Philip Anderson's Notes, A778. It does not appear that Mr. Krause ever provided either the DCAA Human Resources personnel or the members of the selection panel with the more current SF50.

18

the other discrepancies in the process, described below, a reasonable jury could find that the process was skewed and that the motive was discriminatory.

### 2. Was the Selectee "Minimally Qualified"?

As described above, Shawnda Cruz, a Human Resources Specialist at DCAA, was responsible for going through the applications received for the position and determining which ones were qualified for consideration according to OPM Handbook X-118 and the specialized requirements of the position. Utilizing the standards prescribed, Ms. Cruz determined that the selectee lacked the specialized experience required for the position. Shawnda Cruz Decl., A767. Stephanie Harrison, her supervisor, considered Ms. Cruz to be the only person who knew how to perform this task, Stephanie Harrison Decl., A792, yet she overruled Ms. Cruz and certified Mr. Krause as qualified. Shawnda Cruz Decl., A767; Stephanie Harrison Decl., A792-93. The explanation, corroborating Mr. Anderson's testimony, *see* Philip Anderson Decl., A309 – that Ms. Harrison specifically changed Mr. Krause's  rating to minimally qualified despite her view that Ms. Cruz knew more about job analysis and rating, then left him off the list of eligibles but sent his application forward, and then re-typed the list, Stephanie Harrison Decl., A792-93 – is not so convincing that a jury would be required to believe it, because the same declaration contains a lengthy history of feeling bullied and intimidated by Mr. Anderson, and wanting to avoid any more

conflict with him. *See generally* Stephanie Harrison Decl., A788-91. At summary judgment, the Court must disregard all evidence favoring the movant provided by witnesses who are biased, interested, or whose credibility is otherwise tainted, that a jury is not required to believe. *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 150-51 (2000). A reasonable jury could infer from these facts that a white person who actually lacked the minimum qualifications was considered for the job and selected over an African American applicant who clearly had those qualifications, and could reasonably infer a discriminatory motive in that selection.

### 3. Rating and Ranking Was Not Performed and a Career Development Board Was Not Convened.

As described above (at pages 9-11), competitive reassignments and promotions require a process by which a crediting plan is developed for the open position; all of the candidates are rated and ranked; and the applicants are then reviewed by a Career Development Board, which determines the five highest-ranking candidates and sends their names forward to the selecting official. The Agency insists that this process was not required for the position at issue, as it was a noncompetitive reassignment; that is, the selectee was at the same grade level as the position into which he was moving. Philip Anderson Dep., A316.

However, there is a dispute of material fact as to whether it was permissible to fill the position of Deputy Assistant Director, Resource Management, in a noncompetitive fashion. Although Ms. Harrison, an HR specialist, submitted a declaration in which she supports the Agency's position, Stephanie Harrison Decl., A822-23, she earlier wrote Mr. Bush that a competitive selection process should have been used. Note from Stephanie Harrison to Patrick Bush, A623. As discussed above at pages 10-11, the Supplements to the PMM are clear that competitive procedures must be used when the selectee will receive a salary increase of five percent or when he or she will move to a higher level of responsibility than previously held. Both of those conditions were present here: Mr. Krause received a salary increase of five percent and he moved from being a Division Chief to becoming a Deputy Assistant Director, which the applicable chart shows to be a higher level of responsibility. The use of a less rigorous procedure than that required by the relevant manuals governing promotion is also a fact from which a jury could infer racial discrimination. *See Rudin v. Lincoln Land Community College*, *supra,* 420 F.3d at 727 (failure to have a required screening committee review and rank the candidates is evidence of discrimination).

### 4.    Records of the Selection Process Were Not Maintained As Required by Regulation.

Yet another deviation from the required procedure occurred when the records of two selection panel members, Mr. Simpson and Ms. Letzler, were not maintained

as required by 5 C.F.R. § 335.103(b)(5), A696-97, and the PMM, A659-60. A failure to maintain evidence which might have revealed other discrepancies in the selection process permits an inference that the evidence would have been unfavorable. *See Vodusek v. Bayliner Marine Corp.*, 71 F.3d 148, 155-56 (4th Cir. 1995). This is especially so in light of the other irregularities that were present here.

**B.    The Refusal To Nominate Mr. Bush for the DSLDP Training Was Additional Evidence of Discriminatory Motive.**

Additionally, the refusal, just two months before the selection, to nominate Mr. Bush for training that would aid him in advancing to more responsible positions, although he had an outstanding performance evaluation and was the only employee who took the initiative to learn about the program and apply for it, is a fact that a jury might view as casting light on the deviation from normal procedures in the selection process. The appearance of a pattern of ignoring Mr. Bush's qualifications to select someone with questionable threshold qualifications – or to select no one at all – might reasonably be viewed by a jury as implying a discriminatory motive. Prior treatment of an employee is evidence "relevant to a showing of pretext." *McDonnell Douglas Corporation v. Green*, 411 U.S. 792, 804 (1973); *see also Garrett v. Hewlett-Packard Co.*, 305 F.3d 1210, 1217 (10th Cir. 2002) ("Evidence of pretext may include . . . prior treatment of plaintiff . . . [and] disturbing procedural irregularities . . . .").

22

**C.    The Trial Court Improperly Weighed the Evidence in Concluding That the Deficiencies in the Process Were Not Probative of Pretext.**

The trial court, in holding that "any deficiencies in the process are not probative of racial discrimination," Mem. Op., A839, weighed the evidence – precisely what the Supreme Court and this Court have warned against: A "district judge's function in deciding the merit of a motion for summary judgment 'is not himself to weigh the evidence,' *Anderson v. Liberty, Inc.*, 477 U.S. 242, 249, 106 S. Ct. 2505, 91 L. Ed. .2d 202 (1986)." *Williams v. Giant Food Inc.*, 370 F.3d 423, 435 (4th Cir. 2004) (Widener, J., concurring).  A plaintiff's evidence need not be a "smoking gun"; if the evidence "*may* well be believed and *may* well yield [a discriminatory] inference," the defendant is not entitled to summary judgment.  *Merritt v. Old Dominion Freight Line, Inc.*, 601 F.3d 289, 300, 301 (4th Cir. 2010) (emphasis in original).  The internal conflicts in the evidence – whether a current performance evaluation is required, whether Mr. Krause was minimally qualified, whether a competitive process was required, and whether a discriminatory inference can be drawn – all these should have been resolved in favor of Mr. Bush, the nonmoving party, at summary judgment.  *See Charbonnages de France v. Smith*, *supra*, 597 F.2d at 414.

23

### III.    The Trial Court Erred in Concluding that Mr. Bush Failed to Make Out a Prima Facie Case of Discrimination in Training.

To establish a prima facie case of discriminatory denial of training, a plaintiff must show that: (1) the plaintiff is a member of a protected class; (2) the defendant provided training to its employees; (3) the plaintiff was eligible for the training; and (4) the plaintiff was not provided training under circumstances giving rise to an inference of discrimination. *Thompson v. Potomac Electric Power Co.*, 312 F. 3d 645, 649-50 (4th Cir. 2002). The Agency and the Court assert that Mr. Bush cannot make out a *prima facie case* as required because the Agency nominated no one for the DSLDP training in 2009. Mem. Op., A840.

However, it is word games to assert that, because the Agency did not nominate anyone in 2009, it can be viewed as not having offered the training. The Agency provided everyone the opportunity to request the DSLDP training in 2009, because the information was available to all through the Agency's own website. Email from Patrick Bush, A72; Philip Anderson Dep., A385. Similarly, the notion that Mr. Bush was not eligible for the training because he had not undergone a "competitive and arduous process," Mem. Op., A840, is specious: According to his supervisors' assessment, Mr. Bush fully met the metrics for nomination to the program, DSLDP Supervisors' Assessment, A235-37, and as he was the only one seeking nomination,

24

no one else could be deemed a more competitive candidate.  Having shown these facts, Mr. Bush made out a *prima facie* case.

**IV.  The Court Ignored Substantial Evidence in Holding that There Is No Evidence of Pretext in the Agency's Reason for Denying Plaintiff's DSLDP Application.**

In ruling alternatively that "defendant has clearly provided a nondiscriminatory explanation for plaintiff's non-selection [for the DSLDP nomination], and there is no evidence that such an explanation is a pretext for discrimination," Mem. Op., A840, the district court disregarded evidence that cast serious doubt on the credibility of the supposed nondiscriminatory rationale.

**A.    All Employees Had the Same Opportunity to Apply for DSLDP As Did Mr. Bush.**

The explanation that other applicants did not have an equal opportunity to apply for the DSLDP training is patently wrong on its face.  Mr. Bush had no secret information:  As noted above, it is undisputed that information about the program was available from a link on the Agency's own website.  Other employees motivated to explore the available training opportunities could have discovered the program in the same way and applied for it. The explanation that it would be unfair to nominate Mr. Bush because other employees did not seek out the opportunity does not make sense. A plaintiff can "establish that [he] was a victim of intentional discrimination by

'showing that the employer's proffered explanation is unworthy of credence.'" *Dennis v. Columbia Colleton Medical Center, Inc.*, 290 F.3d 639 (4th Cir. 2002), *quoting Texas Dept. Of Community Affairs v. Burdine*, 450 U.S. 248, 256 (1981); *see also United States v. Burgos*, 94 F.3d 849, 868 (4th Cir. 1996) (defendant's implausible explanation may constitute positive evidence in support of a jury verdict).   A reasonable jury could well conclude that such an illogical reason was not the true reason for the refusal to nominate Mr. Bush for the program.   The factfinder's disbelief of the reasons put forth by the defendant is sufficient to show intentional discrimination. *Reeves v. Sanderson Plumbing Products, Inc., supra*, 530 U.S. at 147-48; *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 511 (1993).

### B.   Ms. Stephenson's Explanation of Her Refusal to Nominate Mr. Bush is Contradicted by Mr. Anderson's Explanation and Other Evidence.

Mr. Anderson's explanation of the Agency's refusal to nominate Mr. Bush was that it would be unfair to nominate him if no one else had the opportunity to apply, and that DCAA was in the process of developing a program more suited to its needs. Email from Philip Anderson to Patrick Bush, A73.  April Stephenson, then-Director of DCAA, who made the decision not to nominate Mr. Bush for the program, told a different story:  Although she reiterated that it was unfair to forward Mr. Bush's application when others did not have an "equal  opportunity" to be considered, she

26

also asserted that Mr. Bush's first- and second-line supervisors, Messrs. Simpson and Anderson, did not feel that Mr. Bush had demonstrated readiness for the program, in part because he had exhibited an "apparent lack of initiative." April Stephenson Decl., A241-42.  This explanation is contradicted by Mr. Anderson, who stated that he recommended on two occasions that she approve Mr. Bush's nomination, Philip Anderson Decl., A62, and that the "unfairness" was the only reason the nomination was disapproved. Philip Anderson Dep., A386-87.  This explanation is also contradicted by Messrs. Simpson's and Anderson's "Supervisor's Assessment" for the DSLDP, which stated that Mr. Bush had the potential for more responsible senior leadership "now," A237, and by Mr. Simpson's 2008 performance review of Mr. Bush, which stated that Mr. Bush "[c]ontributed business results beyond what was expected"; that his "[s]upervisory contributions were exemplary"; that he was "[p]roactive and innovative"; and that he "showed initiative." Bush 2008 Performance Evaluation, A230.

### C.    The Shifting Rationales Are Evidence of Pretext.

Mr. Anderson's explanation that it was deemed "unfair" to submit Mr. Bush's nomination without soliciting applications from others is contemporaneous with the event, proffered only a few days afterwards. *See* Email from Anderson to Bush, A73. Ms. Stephenson's additional statement that Mr. Bush wasn't really ready for a

leadership position was made more than a year later, during the investigation following Mr. Bush's EEO complaint. April Stephenson Decl., A241-43. This Court has recognized that a factfinder can infer that a reason appearing late in the litigation is a post-hoc rationale rather than the true reason for an action. *Merritt v. Old Dominion Freight Line, supra*, 601 F.3d at 298.

Additionally, it is established that an employer's proffer of multiple inconsistent explanations is indicative of pretext. *E.g.*, *EEOC v. Sears Roebuck & Co.*, 243 F.3d 846, 852-53 (4th Cir. 2000) ("the fact that Sears has offered different justifications at different times for its failure to hire Santana is, in and of itself, probative of pretext"); *Alvarado v. Board of Trustees*, *supra*, 928 F.2d at 122-23.

Mr. Anderson claimed that DCAA preferred to send its employees to a program it was supposedly in the process of developing, a program that was never again mentioned. Ms. Stephenson made no mention of the developing program but claimed, contrary to the written recommendations of her staff and Mr. Bush's performance evaluation, that Mr. Bush was not ready for the program. That latter claim is amply disputed by the record evidence of his first- and second-line supervisors. If a factfinder were to disregard the nonsensical "fairness" claim, he or she would be left with the two shifting and unsupported rationales, likely indicators of pretext.[8] Like

_____

[8] Another defense offered by the Agency and adopted by the district court (at Mem. Op., A840) simply misses the point of Mr. Bush's claim. It is not relevant that

Mr. Bush's claim of discrimination in the promotion process, his claim of discriminatory denial of training should have been sent to a jury to decide.

## CONCLUSION

In granting summary judgment in favor of the Agency, the district court impermissibly weighed the evidence and drew inferences in favor of the moving party. Wherefore, for the reasons stated above, this Court should reverse the grant of summary judgment as to Mr. Bush's nonselection for the position of Deputy Assistant Director, Resource Management, and as to the 2009 denial of opportunity to participate in the DSLDP, and remand these issues to the district court for a jury trial on the merits.

## REQUEST FOR ORAL ARGUMENT

Appellant respectfully requests oral argument. Appellant believes that this case involves a legal issue of continuing public interest. Summary judgment is sought by defendants in the majority of Title VII cases. A plaintiff's burden at summary

the Agency paid for other training for Mr. Bush. All of the other training provided to Mr. Bush was either directly relevant to his current job (and thus not developmental in nature) or of a much less rigorous character (the Federal Executive Institute is four weeks; the DSLDP is two years). See generally, Patrick Bush Dep., A134-36, 144-45, 168-69, 172. It was the opportunity to compete (and probably be selected, as DoD received only 15 applications for 20 spaces allocated to Defense agencies, Email from Bush to Anderson, A72) for a rigorous training program that could enhance his career that Mr. Bush was denied.

29

judgment "is one of production, not persuasion; it 'can involve no credibility assessment.'" *Reeves v. Sanderson Plumbing Products*, Inc., 530 US 133, 142 (2000), *quoting St. Mary's Honor Center v. Hicks*, 509 U. S. 502, 509 (1993). However, the task of determining whether the evidence produced by a plaintiff could be persuasive to a reasonable factfinder, without engaging in the weighing of evidence, presents a continuing challenge that requires guidance from the Court. For that reason, Appellant believes that oral argument would be helpful in this case.

<div style="margin-left:40%">

Respectfully submitted,

*/s/ Lenore C. Garon*
LENORE C. GARON
Law Office of Lenore C. Garon, PLLC
2412 Falls Place Court
Falls Church, VA 22043
Office: (703) 534-6662
Facsimile: (703) 534-4448
lenore@lenorecgaron.com

DONNA WILLIAMS RUCKER
Rucker & Associates, P.C.
888 Sixteenth Street, N.W., Suite 800
Washington, DC 20006
Office: (202) 349-9830
Facsimile: (202) 355-1399
drucker@ruckerlawpc.com

</div>

October 14, 2014                    Counsel for Appellant

**UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT**
No. <u>14-1803</u>  Caption: <u>Bush v Hagel</u>

**CERTIFICATE OF COMPLIANCE WITH RULE 28.1(e) or 32(a)**
Type-Volume Limitation, Typeface Requirements, and Type Style Requirements

1. **Type-Volume Limitation:** Appellant's Opening Briief, Appellee's Response Brief, and Appellant's Response/Reply Brief may not exceed 14,000 words or 1,300 lines.   Appellee's Opening/Response Brief may not exceed 16,500 words or 1,500 lines. Any Reply or Amicus Brief may not exceed 7,000 words or 650 lines. Counsel may rely on the word or line count of the word processing program used to prepare the document. The word-processing program must be set to include footnotes in the count. Line count is used only with monospaced type.

This brief complies with the type-volume limitation of Fed. R. App. P. 28.1(e)(2) or 32(a)(7)(B) because:

   [ X]   this brief contains <u>6,487 </u> [state number of] words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii), or

   [ ]    this brief uses a monospaced typeface and contains ___[state number of] lines of text, excluding the parts of the brief exempted by Fed. R. App. P.32(a)(7)(B)(iii).

2. **Typeface and Type Style Requirements:** A proportionally spaced typeface (such as Times New Roman) must include serifs and must be 14-point or larger. A monospaced typeface (such as Courier New) must be 12-point or larger (at least 10½ characters per inch).

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

   [ X]   this brief has been prepared in a proportionally spaced typeface using <u>WordPerfect X5               </u>[identify word processing program] in <u>14 point Time New Roman font </u>[identify font size and type style]; or

   [ ]    this brief has been prepared in a monospaced typeface using [identify word processing program] in [identify font size and type style].

Dated: <u>October 14, 1014  </u>          <u>/s/ Lenore C. Garon</u>
                                        Attorney for Patrick W. Bush

31

# United States Court of Appeals
## for the Fourth Circuit

*Patrick Bush v. Chuck Hagel*, No. 14-1804

### CERTIFICATE OF SERVCE

I, Robyn Cocho, being duly sworn according to law and being over the age of 18, upon my oath depose and say that:

Counsel Press was retained by RUCKER & ASSOCIATES, P.C., Attorneys for Appellant to print this document. I am an employee of Counsel Press.

On **October 14, 2014**, Counsel for Appellants has authorized me to electronically file the foregoing **Brief for Appellant** with the Clerk of Court using the CM/ECF System, which will send notice of such filing to the following registered CM/ECF users:

> MICHAEL ANTHONY RIZZOTTI
> OFFICE OF THE UNITED STATES ATTORNEY
> 2100 Jamieson Avenue
> Alexandria, VA 22314-5194
> (703) 299-3731
> michael.rizzotti2@usdoj.gov
> *Counsel for Plaintiffs-Appellee*

Additionally paper copies will be mailed to the above counsel on this date.

Unless otherwise noted, 8 paper copies have been filed with the Court on the same date via U.S. Express Mail.

October 14, 2014                                              /s/ Robyn Cocho
                                                             Counsel Press